UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER BARBATO and NORTH JERSEY PUBLIC ADJUSTERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERSTATE FIRE & CASUALTY COMPANY, INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON - SYNDICATE 2357, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B604510568622002, and ADRIENNE A. HARRIS, IN HER OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, <br><br> Defendants. | Case No: 1:25-cv-05312 (JGK) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MCCLELLAN BERNSTIEL LLP
By: Geoge McClellan, Esq. (*pro hac vice*)
103 Carnegie Center, Suite 300
Princeton, New Jersey
T: (609) 200-0570
F: (888) 230-4245
E: george@mcbelegal.com
*On the brief*

ROLFES HENRY CO., LPA
By: Brian P. Henry, Esq. (5975024)
5415 87th Street East
Bradenton, Florida 34211
T: (941) 684-0100
F: (941) 684-0109
E: bhenry@rolfeshenry.com
E: kmcclintock@rolfeshenry.com

Counsel for Defendants
Interstate Fire & Casualty Company, Independent Specialty Insurance Company, Certain Underwriters at Lloyd's London – Syndicate 2357, and Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622022

## **Table of Contents**

I.   Introduction ................................................................................................................. 1

II.  Legal Argument .......................................................................................................... 2

    A.   This Court has subject matter jurisdiction. ...................................................... 2

    B.   The primary jurisdiction doctrine warrants dismissal. ...................................... 3

    C.   Defendants were contractually privileged to enforce their agreement with
their insured. .................................................................................................... 4

    D.   Plaintiffs' economic advantage with Defendants' insureds also will occur after
Defendants' agreement with their insureds. .................................................... 6

    E.   Plaintiffs must plead a market definition and Defendants' alleged power within that
market under GBL §340. ................................................................................. 7

III. Conclusion .................................................................................................................. 8

## Table of Authorities

### Cases

Discover Grp., Inc. v. Lexmark Int'l, Inc., 333 F. Supp.2d 78, 83 (E.D.N.Y. 2004) ...................... 5

Gonzalez v. Vill. Taxi Corp., 155 A.D.3d 696, 699, 64 N.Y.S.3d 242, 246 (2017) ...................... 7

Great Atl. & Pac. Tea Co. v. Town of E. Hampton, 997 F. Supp. 340, 352 (E.D.N.Y. 1998) ....... 7

Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp., 83 F. Supp.2d 384, 391 (S.D.N.Y. 2000) ........... 5

Lewis v. City of New York, 762 F. Supp.3d 290, 297 (S.D.N.Y. 2025) ........................................ 4

Midwest Railcar Corp. v. Everest Railcar Servs., Inc., No. 16 CIV. 604, 2017 WL 1383765, at *8 (S.D.N.Y. Apr. 13, 2017) ................................................................. 5

Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592-93 (2013) .................................................. 3

State v. Mobil Oil Corp., 38 N.Y.2d 460, 462–63, 381 N.Y.S.2d 426, 428 (1976) ...................... 7

### Statutes

N.J.S.A. §52:14B-8 ........................................................................................................................ 4

N.Y. A.P.A. §204 ........................................................................................................................... 4

N.Y. Fin. Serv. Law §§404(b) ....................................................................................................... 3

N.Y. Fin. Serv. Law §405 .............................................................................................................. 4

N.Y. Fin. Serv. Law §408(a) .......................................................................................................... 3

N.Y. Fin. Serv. Law §409(a) .......................................................................................................... 3

New York General Business Law §340 ................................................................................ 1, 6, 7

I.    **Introduction**

Defendants Interstate Fire & Casualty Company, Independent Specialty Insurance Company, Certain Underwriters at Lloyd's London – Syndicate 2357, and Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622022 (collectively referred to as "Defendants") submit this reply memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiffs Peter Barbato ("Barbato") and North Jersey Public Adjusters, Inc. ("NJPA") (Barbato and NJPA collectively referred to as "Plaintiffs").

Plaintiffs first argue that this Court lacks subject matter jurisdiction under the Class Action Fairness Act ("CAFA") because they inadvertently demanded treble damages under New York General Business Law ("GBL") §340. However, as Defendants explained in their opposition to Plaintiffs' motion to remand (Docket No. 15), (1) Plaintiffs cannot bind the members of a proposed class action by stipulating to seek or accept less than the amount-in-controversy under CAFA and (2) the value to the members of the proposed class of the declaratory and injunctive relief exceeds CAFA's amount-in-controversy requirement. Plaintiffs next argue that the New York Department of Financial Services ("DFS") lacks jurisdiction to adjudicate this dispute because—as surplus lines insurers—the insurance policies that Defendants issue in New York are not directly regulated by the Department. However, Plaintiffs concede that surplus lines insurers do, in fact, fall under the Department's supervisory authority.

Turning to the merits of their allegations, in order to plead a *prima façie* case for tortious interference with contract, Plaintiffs must plead that their contract with Defendants' insured preceded the alleged tortious interference. Thus, Plaintiffs do not argue that the agreement not to use a public adjuster that was reached between Defendants and their insured constituted the tortious interference because Plaintiffs plead that the insurance policy that contains this agreement was entered into before Plaintiffs entered into their agreement with Defendants' insured. Instead,

1

Plaintiffs argue that the tortious interference occurred only when Defendants *enforced* their agreement with their insured. However, that which one has a right to do cannot become a tort when it is done. Plaintiffs next argue that the agreement also interferes with their prospective economic advantage by discouraging insureds from hiring public adjusters, and—unlike with existing contracts—Plaintiffs now contend that the agreement is unlawful simply by virtue of being included in the policy. But that theory still fails because, no matter how Plaintiffs frame their legal theory, Plaintiffs fail to plead facts that their potential business relation with Defendants' insureds could occur before Defendants' insureds agree not to use public adjusters. Finally, Plaintiffs argue that they have pleaded viable antitrust claims because the agreement violates the second, stand-alone clause of New York's antitrust statute, which they argue does not require them to plead market power or market definition. However, even if Plaintiffs limit their allegations to that portion of the statute, Plaintiffs must still plead facts establishing the relevant market and Defendants' power within it—allegations that are entirely absent from the Complaint.

## II.     Legal Argument

### A.     This Court has subject matter jurisdiction.

As Defendants established at length in their memorandum of law in opposition to Plaintiffs' motion to remand, when Defendants removed Plaintiffs' Class Action Lawsuit, Defendants set forth two independent bases to satisfy the $5,000,000 amount-in-controversy requirement under CAFA: (1) Defendants presented a conservative estimate of the treble damages that Plaintiffs sought to prove on behalf of the proposed class pursuant to GBL §340; and (2) Defendants presented a conservative estimate of the value of the declaratory and injunctive relief that Plaintiffs sought on behalf of the proposed class for alleged tortious interference with economic advantage and restraint of trade. See Docket No. 15 at p. 4. In both their opposition to this motion as well as in support of their motion to remand, Plaintiffs argue that they did not intend to seek millions of

2

dollars in treble damages. See Docket No. 14 at p. 6; 8-2 at p. 4. However, as Defendants argued at length in their opposition to Plaintiffs' motion to remand, Plaintiffs cannot bind members of the proposed class before it is certified. See Docket No. 15 at pp. 8-12 (citing, *inter alia*, Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592-93 (2013)). In addition, as Defendants further argued at length in their opposition, Plaintiffs have not challenged that the value of the declaratory and injunctive relief that Plaintiffs seek on behalf of the proposed class is greater than CAFA's $5,000,000 amount-in-controversy threshold. See id. at pp. 13-15. Consequently, for the reasons set forth at length in Defendants' opposition to Plaintiffs' motion to remand, this Court should reject this argument as presented in opposition to the motion to dismiss.

### B. The primary jurisdiction doctrine warrants dismissal.

As Defendants demonstrated in their moving brief, N.Y. Fin. Serv. Law §§404(b), 408(a), and 409(a) establish the primary jurisdiction of DFS over the justiciable controversies presented in this lawsuit. Defendants also cited cases from this Court and the New York state courts recognizing DFS's primary jurisdiction in analogous circumstances. In their opposition, Plaintiffs acknowledge that DFS has jurisdiction over Defendants in a "broad sense," but argue that DFS does not have primary jurisdiction over the issues in this case because DFS does not approve the endorsements in insurance policies issued by surplus lines insurers such as Defendants. See Docket 14 at p. 7. However, Plaintiffs cite no legal authority to support the proposition that DFS must approve the provisions in an insurance policy in order to exercise primary jurisdiction over insurance conduct, which the federal government has delegated to the exclusive province of the states. See 15 U.S.C. §1012(a). Moreover, Plaintiffs do not even attempt to distinguish any of the legal authority upon which Defendants relied in their moving brief where DFS had primary jurisdiction. Thus, Defendants respectfully submit that this Court should reject Plaintiffs' position.

3

Plaintiffs also argue that the New Jersey Department of Banking and Insurance did not respond to a lawsuit in which Plaintiffs named it as a defendant in the Superior Court of New Jersey and that Plaintiffs have similarly named the Commissioner of DFS in this lawsuit. However, as Defendants explained in their moving brief, naming an administrative agency as a defendant in a lawsuit was not the proper procedural vehicle by which to solicit a response from the agency. See Docket No. 4-2 at p. 13 (citing N.Y. A.P.A. §204; N.Y. Fin. Serv. Law §405); see also N.J.S.A. §52:14B-8 (establishing procedure by which a party may petition an administrative agency in New Jersey for declaratory relief). Likewise, Plaintiffs state that it is their "understanding" that Defendants have "long-since petitioned" DFS and "leave it to" Defendants to disclose DFS's response. Defendants do not know why Plaintiffs developed such an "understanding" or why it is relevant. The public record (about which the Court may take judicial notice in adjudicating a motion to dismiss, see Lewis v. City of New York, 762 F. Supp.3d 290, 297 (S.D.N.Y. 2025)) establishes that Defendants have not contacted DFS and thus there is nothing further to disclose. See BER-L-1591-23, Trans ID: LCV20241241881 at pp. 19-23 (postulating what would be required if Defendants were to petition DFS for declaratory relief).

C. **Defendants were contractually privileged to enforce their agreement with their insured.**

In their moving brief, Defendants established that Plaintiffs' claim tortious interference with contract fails as a matter of law because (1) Plaintiffs' contract with Defendants' insured was at-will and (2) Plaintiffs fail to plead that they had an existing contract when the Insured and Defendants reached their agreement not to use public adjusters. In their opposition, Plaintiffs argue—without citing any legal authority—that whether Plaintiffs' contract with Defendant's insured was at-will is irrelevant. However, under well-established New York law, a cause of action for tortious interference (i.e., the cause of action pleaded by Plaintiffs) cannot be based on an at-

4

will contract such as the one between Plaintiffs and Defendants' insured. See Discover Grp., Inc. v. Lexmark Int'l, Inc., 333 F. Supp.2d 78, 83 (E.D.N.Y. 2004). Plaintiffs do not even address this legal authority.

In addition, in order to avoid having their claim dismissed on the basis that Defendants' agreement with their insured occurred before Plaintiffs entered into their contract with Defendants' insured, Plaintiffs argue that Defendants' agreement with their insured not to use public adjusters did not tortiously interfere with Plaintiffs' contract with Defendants' insured, but rather, it was Defendants' action of enforcing their pre-existing agreement with their insured that tortiously interfered with Plaintiffs' contract. See Docket No. 14 at p. 10. However, the ramification of Plaintiffs' concession that Defendants' agreement with their insured did not tortiously interfere with Plaintiffs' contract with Defendants' insured is to intimate that Defendants were contractually privileged to agree with their insured not to use public adjusters and such agreement was not a violation or tortious. However, "the action that induces the alleged breach cannot have been one that the accused tortfeasor was privileged to take." Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp., 83 F. Supp.2d 384, 391 (S.D.N.Y. 2000) (granting summary judgment for defendant where plaintiffs did not allege, let alone prove, tortious interference where defendant was contractually permitted to terminate financing agreement with plaintiff); Midwest Railcar Corp. v. Everest Railcar Servs., Inc., No. 16 CIV. 604, 2017 WL 1383765, at *8 (S.D.N.Y. Apr. 13, 2017) (dismissing tortious interference claim where defendant was contractually permitted to cease remitting payments to plaintiff). Because Plaintiffs do not contend that Defendants' agreement with their insured was tortious, Plaintiffs cannot later contend that Defendants' subsequent enforcement of that contractual right was tortious. Therefore, Defendants respectfully submit that

this Court should overrule Plaintiffs' objections to Defendants' motion to dismiss Plaintiff's first cause of action.

> **D.    Plaintiffs' economic advantage with Defendants' insureds also will occur <u>after</u> Defendants' agreement with their insureds.**

As Defendants demonstrated in their moving brief, Plaintiffs failed to plead facts to support that they could have a potential expectation of business relations with Defendants' insureds because Defendants' agreements with their insureds would necessarily always occur <u>before</u> Plaintiffs could have any potential business relationship with Defendants' insureds. In their opposition, Plaintiffs do not address Defendants' legal argument. Instead, Plaintiffs argue at length that the reference to "business relations" as the first element of a *prima façie* case for tortious interference with economic advantage in published legal authority that Defendants cited from this Court and the Second Circuit refers to "potential" — as opposed to existing — business relations. However, Defendants did not argue that Plaintiffs' tortious interference claim with economic advantage fails as a matter of law because Plaintiffs did not plead that they had existing business relations. To the contrary, consistent with the clear legal authority from this Court and the Second Circuit cited in the moving brief, Defendants contend that Plaintiffs' claim fails as a matter of law because they have not pleaded facts to support that they have a <u>potential</u> business relation with Defendants' insureds. Plaintiffs also argue that their allegation that Defendants' agreements with their insureds violate public policy is the equivalent of a tort or crime, without showing this Court how this alleged violation of public policy is in fact tortious or criminal. However, Defendants have not moved to dismiss on this basis either. Consequently, Defendants respectfully request that this Court reject Plaintiffs' non-responsive objections to Defendants' motion to dismiss this claim.

### E. Plaintiffs must plead a market definition and Defendants' alleged power within that market under GBL §340.

As set forth in Defendants' moving brief, Plaintiffs failed to plead facts to define the market in which Plaintiffs contend Defendants have acted improperly and the power that Defendants supposedly wield in that market. In their opposition, Plaintiffs argue that they do not need to plead these facts because they rely only on the portion of GBL §340 that prohibits contracts whereby "the free exercise of any activity" in the conduct of any business within the state is or may be restrained. Docket No. 14 at p. 15. Plaintiffs fail to cite a single case in which any court has held that the "free exercise" clause in the second sentence of GBL §340 exempts a plaintiff from pleading the essential elements of market definition and market power. Defendants have not found any case where such a theory has even been asserted, much less accepted. To the contrary, courts routinely hold that when a party pleads a violation of GBL §340 (including allegations predicated on an alleged restraint of the "free exercise of any activity"), that party must plead facts that both define the market and the defendants' alleged power within the relevant market. See Gonzalez v. Vill. Taxi Corp., 155 A.D.3d 696, 699, 64 N.Y.S.3d 242, 246 (2017); Great Atl. & Pac. Tea Co. v. Town of E. Hampton, 997 F. Supp. 340, 352 (E.D.N.Y. 1998).

Plaintiffs also incorrectly assert that Defendants invoke federal rather than state-based interests. However, Defendants cite federal legal authority to support their position because, as Defendants explained in their moving brief, GBL §340 is based on and has been narrowly construed to encompass only those claims falling within the federal Sherman Act. See State v. Mobil Oil Corp., 38 N.Y.2d 460, 462–63, 381 N.Y.S.2d 426, 428 (1976); Great Atl., 997 F. Supp. at 340. Consequently, this Court should reject Plaintiffs' arguments related to their antitrust claims.

7

**III.     Conclusion**

For the reasons set forth above, Defendants respectfully request that this Court dismiss Plaintiffs' complaint with prejudice.

August 8, 2025

                            By: Brian P. Henry, Esq. (5975024)

                            _/s/ *Brian P. Henry*_
                            ROLFES HENRY CO., LPA