```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────

PETER BARBATO & NORTH JERSEY PUBLIC
ADJUSTERS, INC.,                              25-cv-5312 (JGK)
                    Plaintiffs,
                                              MEMORANDUM OPINION
       - against -                            AND ORDER

INTERSTATE FIRE & CASUALTY COMPANY,
ET AL.,
                    Defendants.
─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiffs, Peter Barbato ("Barbato") and North Jersey Public Adjusters, Inc. ("NJPA"), bring this action against Interstate Fire & Casualty Company, Independent Specialty Insurance Company, Certain Underwriters at Lloyd's London – Syndicate 2357, and Certain Underwriters at Lloyd's and other insurers subscribing to binding authority B60451458522002 (collectively, "the defendants"). Compl., ECF No. 1, Ex. 1, ¶¶ 1-6.[1]

The plaintiffs allege that the defendants issued insurance policies containing provisions that prohibit insureds from retaining public adjusters. Id. ¶¶ 15-16. The complaint asserts three individual claims and two class claims: (1) tortious

---

[1] The complaint also names Adrienne A. Harris, in her official capacity as Superintendent of the New York State Department of Financial Services, as a defendant. Id. ¶ 7. However, the complaint names her only "for the limited purpose of affording the Department an opportunity to take a position on the merits of the action should it wish to do so." Id. Because the plaintiff seeks no relief from Harris, Harris is dropped as a party pursuant to Federal Rule of Civil Procedure 21.

interference with contractual relations (Count I); (2) tortious interference with economic advantage (Count II); (3) restraint of trade in violation of N.Y. Gen. Bus. Law § 340 (Count III); (4) a putative class claim for tortious interference with economic advantage (Count IV); and (5) a putative class claim for restraint of trade under N.Y. Gen. Bus. Law § 340 (Count V). Id. ¶¶ 19-51.

As relief for Counts I through III, the plaintiffs seek declaratory and injunctive relief and also seek compensatory damages, treble damages, consequential damages, punitive damages, attorney's fees, and costs of suit. Id. at 5-7. For Count IV, the plaintiffs seek declaratory and injunctive relief, as well as attorneys' fees and costs of suit. Id. at 9. For Count V, the plaintiffs seek declaratory and injunctive relief, as well as treble damages, attorney's fees, and costs of suit, but they do not expressly request compensatory damages. Id. at 10.

The plaintiffs move to remand this case to the New York State Supreme Court, New York County, from which it was removed to this Court. ECF No. 8.

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and the Notice of Removal and are accepted as true for purposes of the current motion.

The plaintiff, NJPA, is a New Jersey public adjusting company licensed by the State of New York. Id. ¶ 1. The individual plaintiff, Barbato, is an owner and employee of NJPA. Id. ¶ 2. The plaintiffs allege that the defendants are foreign insurance companies whose policy endorsement forms did not require and did not receive approval from the New York State Department of Financial Services.[2] Id. ¶¶ 3-6, 18.

The plaintiffs allege that, on or about April 1, 2022, the defendants collectively issued Policy No. VNB-CN-000xxxx-03 [redacted] ("the Policy") to 122-20 Ocean Promenade Owner LLC (the "Insured") to cover the Insured's apartment building located at 158 West 27th Street, New York, New York 10001 (the "Property"). Id. ¶ 9. The plaintiffs allege that the Property subsequently suffered a fire loss. Id. ¶ 10.

The Insured allegedly retained Barbato to assist with the insurance claim. Id. ¶ 11. The plaintiffs allege that, on or about March 22, 2023, the defendants, through an agent, sent a

---

[2] However, in their Notice of Removal, the defendants represent that Interstate Fire & Casualty Company is an Illinois corporation and that Independent Specialty Insurance Company is a Texas corporation. Defs.' Notice of Removal ("Notice of Removal"), ECF No.1, ¶¶ 16-17.

3

letter to the Insured invoking the Policy's "Anti-Public Adjuster Endorsement" (the "Endorsement") and demanding that the Insured cancel its contract with Barbato within ten days. Id. ¶ 14. The Endorsement provides:

> It is understood and agreed that a condition of this POLICY is that the NAMED INSURED shall not hire, engage, retain, contract with, or otherwise utilize the services of a public adjuster, whether or not licensed in the state where the property is located or any other jurisdiction, to inspect, evaluate, or adjust any loss covered by the POLICY.

Id. ¶ 15 (emphasis in the original).

The plaintiffs allege that, as a result of the defendants' letter, the Insured terminated its contract with the plaintiffs, causing the plaintiffs to lose a prospective fee calculated as a percentage of the insurance proceeds paid to the Insured. Id. ¶ 17.

The plaintiffs initially brought this action in the Supreme Court of the State of New York, New York County, on May 28, 2025. Notice of Removal ¶ 1. On June 26, 2025, the defendants timely removed the case to the United States District Court for the Southern District of New York, pursuant to the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1332 et seq., based on the class claims asserted in Counts IV and V. See ECF No. 1. The plaintiffs then moved to remand this case to the state court. ECF No. 8. For the reasons that follow, the plaintiffs' motion to remand is **denied.**

## II. LEGAL STANDARDS

Removal from state court is governed by 28 U.S.C. § 1441, which provides that the only civil actions subject to removal are those over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "[A] district court, when determining whether it has original jurisdiction over a civil action, should evaluate whether that action could have been brought originally in federal court . . . either because it raises claims arising under federal law or because it falls within the court's diversity jurisdiction." Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 441 (2019).

CAFA expands diversity jurisdiction to include any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, that is, where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2), (5)(b), (6); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006).

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). "To determine whether that burden has been met, [courts] look first to the plaintiffs' complaint and then to [the defendants']

petition for removal." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000). In cases involving an indeterminate complaint, although the defendants must "apply a reasonable amount of intelligence in ascertaining removability," the defendants are "not required to consider material outside of the complaint or other applicable documents for facts giving rise to removability." Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 143, 145 (2d Cir. 2014).

### III. DISCUSSION

The plaintiffs assert two putative class action claims: (1) tortious interference with economic advantage (Count IV) and (2) restraint of trade pursuant to N.Y. Gen. Bus. Law § 340 (Count V). The plaintiffs allege that the class consists of "hundreds of individuals and companies currently licensed by the State of New York as public adjusters." Compl. ¶ 37.

As relief for Count IV, the plaintiffs seek a declaratory judgment that the Endorsement is "contrary to law and is not binding upon an insured" and an injunction "prohibiting the defendants from including [the Endorsement] in policies issued for property located in that State of New York." Id. at 9. For Count V, the plaintiffs seek a declaratory judgment that the Endorsement "violates N.Y. Gen. Bus. Law § 340," an injunction "prohibiting the defendants from including or enforcing [the

6

Endorsement] in policies issued for property located in New York," and treble damages. Id. at 10. Notably, although the plaintiffs expressly seek treble damages for Count V, they do not explicitly seek compensatory damages. Id.

First, the defendants have shown that the proposed class consists of at least 100 members. The plaintiffs' complaint alleges that "hundreds" of public adjusters are affected by the defendants' policies. Id. ¶ 37. The defendants also note that there are 743 public adjusters licensed to practice in the state of New York. Notice of Removal ¶ 12; ECF No. 1, Ex. 3. Taken together, the defendants have sufficiently demonstrated that the putative class exceeds 100 members.

Second, the defendants have shown that minimal diversity exists between the plaintiffs and the defendants. The plaintiff, NJPA, is a New Jersey corporation with its principal place of business in Fairview, New Jersey, and the plaintiff, Barbato, resides and works in New Jersey. Notice of Removal ¶¶ 14-15. Therefore, both plaintiffs are citizens of New Jersey. The plaintiffs allege that all defendants are foreign corporations. Compl. ¶¶ 3-6. The defendants' notice of removal identifies Interstate Fire & Casualty Company as an Illinois corporation, Independent Specialty Insurance Company as a Texas corporation, and the remaining defendants as foreign corporations. Notice of Removal ¶¶ 16-19. None of the defendants is alleged to be a

7

citizen of New Jersey. Accordingly, because at least one plaintiff is a citizen of a different state from at least one defendant, the defendants have sufficiently demonstrated minimal diversity.

Ultimately, the central issue is whether the amount in controversy exceeds $5 million. The defendants bear "the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Mehlenbacher, 216 F.3d at 296. Where the plaintiff seeks injunctive or declaratory relief, "the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991).

As noted above, the allegations in Count V seek treble damages without mentioning compensatory damages. The defendants construe the request for treble damages as including an implicit demand for compensatory damages, while the plaintiffs characterize it as a "scrivener's error" – an inadvertent inclusion of treble damages without even seeking compensatory damages. Notice of Removal ¶¶ 23-28; Pls.' Mot. to Remand 3, ECF No. 8-2. The plaintiffs maintain that they did not intend to seek any monetary damages at all. Pls.' Mot. to Remand 3. However, the treble-damage demand cannot be read out of Count V

based on the plaintiffs' subsequent representation because, at the jurisdictional stage, the allegations must be assessed on their face as of the time the suit is filed in the state court. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938) ("[T]hough . . . the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998) ("[F]or purposes of removal jurisdiction, we are to look at the cases as of the time it was filed in state court . . . .").

Even if the plaintiffs' post-removal characterization of the relief sought in Count V merits some consideration, the plaintiffs "cannot legally bind members of the proposed class before the class is certified." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593 (2013). In Knowles, the Supreme Court vacated the district court's remand order that rested solely on the plaintiff's stipulation to seek less than $5 million in aggregate damages, even though the district court's own calculation exceeded $5 million. Id. at 591. The Court held that a precertification stipulation of damages is inherently nonbinding and that the federal court should consider "for purposes of determining the amount in controversy, the very real possibility that a nonbinding, amount-limiting, stipulation may

9

not survive the class certification process." Id. at 594. To hold otherwise, the Court explained, "would, for CAFA jurisdictional purposes, treat a nonbinding stipulation as if it were binding, exalt form over substance, and run directly counter to CAFA's primary objective." Id. at 595.

In this case, the plaintiffs' position is even more extreme than the plaintiff in Knowles – the plaintiffs state that they "stipulate to nothing" and "do not seek even a penny." Pls.' Reply in Supp. of Mot. to Remand 2, ECF No. 16; Pls.' Mot. to Remand 5. Because the class has not yet been certified, the plaintiffs' decision not to seek monetary damages cannot bind putative class members. Treating such a nonbinding representation as conclusively limiting the amount in controversy would, as Knowles cautioned, contravene CAFA's objectives. 568 U.S. at 595 (2013). Accordingly, the plaintiff's claim not to seek monetary damages and not to seek treble damages despite the claim for treble damages in the complaint is disregarded. Therefore, as the defendants contend, it is more reasonable to interpret the plaintiffs' request for treble damages as including a request for compensatory damages.

Moreover, the complaint and the Notice of Removal show a reasonable probability that the amounts in controversy in Counts IV and V are in excess of $5 million. Because neither Count in the complaint alleges specific figures for the plaintiffs'

10

damages as a result of the Endorsement, nor any aggregate damages for the proposed class, the analysis focuses on the defendants' Notice of Removal. See Mehlenbacher, 216 F.3d at 296.

With respect to the damages sought in Count V, the defendants estimated that the Endorsement would cause each public adjuster to lose annual engagements worth $100,000, with their average commission rate of 10%, which is below the statutory maximum of 12.5%. Notice of Removal ¶¶ 25-26. Because the proposed class comprises "individuals and companies currently licensed by the State of New York as public adjusters," Compl. ¶ 37, the defendants treat the class as all 743 licensed public adjusters licensed in New York and estimate an aggregate annual loss of approximately $7.43 million per year [($100,000 × 10%) × 743], Notice of Removal ¶ 27. The alleged lost income for just one year shows that the amount in controversy in Count V easily exceeds $5 million.

The plaintiffs contend that the defendants allegedly overestimated the commission rate, asserting that the named public adjusters in this case only lost a commission of $5,000. Pls.' Mot. to Remand 2. However, even using the plaintiffs' later-asserted loss in a single transaction, that is, $5,000, the aggregate loss of the class would be $3,715,000 ($5,000 × 743). Pls.' Mot. to Remand 2. Assuming that the Endorsement only

11

affected a single transaction for each public adjuster, with treble damages demanded, the amount in controversy would exceed $11 million ($3,715,000 × 3), let alone that each public adjuster likely had multiple policies affected by the Endorsement, and this would be the loss only for a single year.

Moreover, the defendants need not rely on the value of the damages sought in Count V because the value of injunctive or declaratory relief sought in Count IV could also satisfy the CAFA jurisdictional amount and support removal. The defendants calculated the value of the injunctive and declaratory relief, noting that if such relief were granted, the 743 licensed public adjusters in New York would be able to earn commissions of up to 12.5% for all future engagements, free of the Endorsement's restrictions. Notice of Removal ¶ 30.[3]

The plaintiffs argue that a valuation of the injunctive and declaratory relief would be too speculative. Pls.' Reply in Supp. of Mot. to Remand 3-4. However, valuations of injunctive and declaratory relief grounded in past earnings or commissions are not impermissibly speculative at the jurisdictional stage. See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347

---

[3] While the defendants have not provided an exact valuation of the injunctive and declaratory relief, their own figures suggest that its maximum annual value is approximately $9.3 million. Using the plaintiffs' own asserted commission rate, the value would amount to about $3.715 million per year, assuming that each public adjuster secured only one engagement annually. And the jurisdictional value of the injunctive and declaratory relief would be met in somewhat more than one year.

12

(1977) (valuing the amount in controversy based on projected losses in sales and compliance costs resulting from the challenged statute); A.F.A. Tours, 937 F.2d at 88-89 (holding that estimates of future revenue loss calculated based upon the defendant's customer number and historical profits may satisfy the jurisdictional threshold).

    The plaintiffs point to Kheel v. Port of New York Auth. to argue that the defendants' valuation of injunctive and declaratory relief is too speculative. 457 F.2d 46, 49 (2d Cir. 1972); Pls.' Reply in Supp. of Mot. to Remand 4. In Kheel, a state statute authorized the Port Authority of New York to acquire the Hudson & Manhattan Tubes and construct the World Trade Center. 457 F.2d at 47. The plaintiffs, including commuters and transit users in New York, alleged that these projects would divert the Port Authority's attention and resources away from planning and building coordinated transit improvements, such as new subways and buses, which, in turn, would increase their transportation costs. Id. at 47, 49. The Court of Appeals for the Second Circuit held that the plaintiffs' theory to challenge the state statute was too indirect and speculative: even if the statute was enjoined, there would be no immediate, concrete economic benefit to the plaintiffs because the hoped-for transit projects "would be far from realization." Id. at 49.

13

However, in this case, the causal chain is far less remote. If the defendants were enjoined from including the Endorsement in their policies, insureds could immediately engage public adjusters. As the plaintiffs' own experience suggests, the Endorsement is *the* obstacle to obtaining engagements. An injunction or declaratory judgment removing that obstacle cannot reasonably be deemed valueless. Moreover, the plaintiffs do not dispute the reasonableness of either the number of affected public adjusters or the assumed worth of each annual engagement. Even applying the plaintiffs' own commission rate, the defendants have provided a reasonable estimate of the value of the injunctive and declaratory relief that would exceed the jurisdictional requirement within two years ($5,000 × 743 × 2).

The defendants have sufficiently shown that there is a reasonable probability that the plaintiffs' class claims exceed $5 million. Because the defendants have also sufficiently shown that there are more than 100 members of the class and minimal diversity, a federal court has jurisdiction over Counts IV and V pursuant to CAFA and § 1332. Therefore, the plaintiffs' motion to remand is **denied.**

## IV. CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are

either moot or without merit. For the foregoing reasons, the plaintiffs' motion to remand is **denied**.

The Clerk is respectfully directed to amend the list of the defendants and drop Adrienne A. Harris in her official capacity as Superintendent of the New York State Department of Financial Services as a defendant in this case, in accordance with footnote 1. The Clerk is also respectfully requested to close ECF No. 8.

SO ORDERED.
Dated:   New York, New York
         October 17, 2025

_____
John G. Koeltl
United States District Judge