UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————————————

PETER BARBATO & NORTH JERSEY PUBLIC
ADJUSTERS INC.,                                       25-cv-5312 (JGK)
                        Plaintiffs,

                                                      MEMORANDUM OPINION
         - against -                                  AND ORDER

INTERSTATE FIRE & CASUALTY COMPANY,
ET AL.,
                        Defendants.
—————————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiffs, Peter Barbato ("Barbato") and North Jersey
Public Adjusters, Inc. ("NJPA"), bring this action against In-
terstate Fire & Casualty Company, Independent Specialty
Insurance Company, Certain Underwriters at Lloyd's of London –
Syndicate 2357, and Certain Underwriters at Lloyd's and other
insurers subscribing to binding authority B604510568622002 (col-
lectively, "the defendants"). Compl., ECF No. 1, Ex. 1, ¶¶ 1-6.

     The plaintiffs allege that the defendants issued insurance
policies containing provisions that prohibit insureds from re-
taining public adjusters. Id. ¶¶ 15-16. The complaint asserts
three individual claims and two class claims: (1) tortious in-
terference with contractual relations (Count I); (2) tortious
interference with economic advantage (Count II); (3) restraint
of trade in violation of N.Y. Gen. Bus. Law § 340 (Count III);
(4) a putative class claim for tortious interference with eco-
nomic advantage (Count IV); and (5) a putative class claim for

restraint of trade in violation of N.Y. Gen. Bus. Law § 340 (Count V). Id. ¶¶ 19-51.

The defendants removed this action from the New York State Supreme Court, New York County, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). See Notice of Removal, ECF No. 1.

The defendants move to dismiss the plaintiffs' complaint in its entirety. ECF No. 13. For the reasons that follow, the defendants' motion to dismiss is **granted**.

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for purposes of the current motion.

NJPA is a New Jersey public adjusting company licensed by the State of New York. Compl. ¶ 1. The individual plaintiff, Barbato, is an owner and employee of NJPA. Id. ¶ 2. The plaintiffs allege that the defendants are foreign insurance companies whose policy endorsement forms did not require and did not receive approval from the New York State Department of Financial Services ("DFS"). Id. ¶¶ 3-6, 18.

The plaintiffs allege that, on or about April 1, 2022, the defendants collectively issued an insurance policy ("the Policy") to 122-20 Ocean Promenade Owner LLC (the "Insured"). Id.

2

¶ 9. The Policy covered the Insured's apartment building located at 158 West 27th Street, New York, New York 10001 (the "Property"). Id. The plaintiffs allege that the Property subsequently suffered a fire loss. Id. ¶ 10.

The Insured allegedly retained Barbato to assist with the insurance claim. Id. ¶ 11. On March 19, 2023, NJPA and the Insured executed a public adjuster agreement (the "NJPA Agreement") with no fixed end date. Cert. of Brain P. Henry, Ex. 1, ECF No. 13-5.

The plaintiffs allege that, on or about March 22, 2023, the defendants, through an agent, sent a letter to the Insured invoking the Policy's "Anti-Public Adjuster Endorsement" (the "APA clause") and demanding that the Insured cancel its contract with Barbato within ten days. Compl. ¶¶ 13-14. The APA clause provides:

> It is understood and agreed that a condition of this POLICY is that the NAMED INSURED shall not hire, engage, retain, contract with, or otherwise utilize the services of a public adjuster, whether or not licensed in the state where the property is located or any other jurisdiction, to inspect, evaluate, or adjust any loss covered by the POLICY.

Id. ¶ 15 (capitalization in original).[1]

The plaintiffs allege that, as a result of the defendants' letter, the Insured terminated its contract with the plaintiffs,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

causing the plaintiffs to lose a prospective fee calculated as five percent of the insurance proceeds paid to the Insured. Id. ¶ 17; NJPA Agreement.

This Court invited DFS to submit a letter addressing the issue of primary jurisdiction in this case. ECF No. 18. DFS submitted its letter on November 7, 2025. ECF No. 21.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

Both parties agree that New York law should apply to the claims in this case. See Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mot.") 3–4, ECF No. 13-3; Pls.' Mem. Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") 6, 8-10, ECF No. 14. "Under New York choice of law rules, where both parties agree as to the applicable law, that agreement is sufficient to establish choice of law." Excelsior Cap. LLC v. Allen, No. 11-cv-7373, 2012 WL 4471262, at *9 (S.D.N.Y. Sep. 26, 2012), aff'd, 536 F. App'x 58 (2d Cir. 2013) (summary order). The Court therefore "follow[s] their lead." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

## III. DISCUSSION

### A. Primary Jurisdiction

The defendants argue that the plaintiffs' claims should be dismissed because the dispute allegedly falls within the primary jurisdiction of DFS. Defs.' Mot. 4-7.

The doctrine of primary jurisdiction is a prudential doctrine that "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. W. Pac. R. Co., 352 U.S. 59, 64 (1956).

Courts generally decline to apply the doctrine of primary jurisdiction "when the issue at stake is legal in nature and lies within the traditional realm of judicial competence." Palmer v. Amazon.com, Inc., 51 F.4th 491, 507 (2d Cir. 2022). Specifically, the Court of Appeals of the Second Circuit has determined that "statutory interpretation, . . . applying reasonably settled definitions in a statute to the facts of a case, . . . and issues involving the application of common law principles" fall "within the daily fare of federal judges." Id. In this case, the plaintiffs' claims sound in common law and require application of N.Y. Gen. Bus. Law § 340 to the facts at

hand — tasks squarely within the conventional experience of the federal courts.

The defendants contend that the DFS should have primary jurisdiction because provisions in Financial Services Law Article 4 ("Article 4"), including §§ 404(b), 408(a), and 409(a), vest DFS with authority to investigate and enforce charges of misconduct under the insurance laws. Defs.' Mot. 6. However, as DFS explains in its letter, the defendants' argument overstates DFS's statutory authority. DFS Letter 2-3, ECF No. 21. Article 4 authorizes DFS to investigate, to issue statements of charges, to conduct hearings, and to report violations of the Insurance Law or the Financial Services Law. Id. Defendants' inclusion of the APA clause in the Policy is "not expressly prohibited by the laws and regulations that DFS is tasked with implementing," and therefore "cannot violate the Insurance Law or the Financial Services Law because neither law expressly bars such language." Id. at 2. Therefore, contrary to what the defendants argue, the defendants' conduct falls outside DFS's Article 4 authority.

Relying on Azby Brokerage Inc. v. Allstate Ins., 637 F. Supp. 382 (S.D.N.Y. 1986), and Fusco v. New York Property Underwriters Associates, 417 N.Y.S.2d 310, 311 (App. Div. 1979), the defendants also argue that "the presence of regulatory expertise and the need for uniform policy determinations" support applying

primary jurisdiction. Defs.' Mot. 5. That argument is unpersuasive. Azby concerned the New York Automobile Insurance Plan, a state-mandated program, 637 F. Supp. at 387–88, and Fusco involved a state-created statutory entity whose rulings were appealable to the Superintendent of Insurance, 417 N.Y.S.2d at 311. In both cases, the statutory schemes demonstrated a clear legislative intent to channel disputes to the agency, and uniform administration of these programs counseled deference to the insurance regulators familiar with the programs' rules and operations.

This case is different. It does not arise from a comprehensive regulatory program or a state-created entity that requires agency oversight. To the contrary, DFS has no direct authority to bar the defendants from including an anti-public-adjuster clause because the defendants are excess-line insurers whose policy forms are not subject to DFS's review or approval. See DFS Letter 2. In the absence of any statute or regulation governing the clause at issue, DFS lacks any relevant regulatory expertise to resolve the dispute and there is no need for uniform administrative treatment.

Because the issues presented fall within the conventional expertise of the federal courts, rather than within a statutory scheme committed to agency expertise, the doctrine of primary jurisdiction does not support dismissal of this action.

### B. Tortious Interference with Contract (Count I)

The plaintiffs allege that, by enforcing the APA clause, the defendants induced the Insured to terminate its contract with the plaintiffs, thereby tortiously interfering with that contract. Compl. ¶¶ 19-24.

To state a claim for tortious interference with contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006).

First, the defendants contend that, because the APA clause predated the NJPA Agreement, the complaint fails to allege an existing, valid contract at the time the APA clause was formed. Defs.' Mot. 8-9. That contention misses the mark. The complaint does not allege that the formation of the APA clause interfered with the plaintiffs' contract; rather, it alleges that the defendants' enforcement of the APA clause – namely, urging the Insured to cancel its public adjuster contract with the plaintiffs pursuant to the APA clause – constituted the interference. See Compl. ¶ 22; Pls.' Opp'n 7. Because the alleged enforcement occurred after the NJPA Agreement, the complaint sufficiently

9

pleads the existence of a valid contract at the time of the pur-
ported interference.

The defendants also argue that there cannot be a claim for
tortious interference with contract because the NJPA Agreement
has no fixed end date, and was therefore terminable at will. See
Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 976
F.3d 239, 245 (2d Cir. 2020) ("Under New York law, it is well
settled that a contract of indefinite duration is terminable at
will unless the contract states expressly and unequivocally that
the parties intend to be perpetually bound."). The defendants
argue that a terminable-at-will contract cannot serve as the ba-
sis for a claim of tortious interference with contract. Defs.'
Mot. 8.

That contention is inconsistent with New York law. An at-
will contract may be the object of a tortious interference
claim, although liability based on at-will contracts can be "im-
posed only on proof of more culpable conduct on the part of the
interferer." Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,
406 N.E.2d 445, 449-50 (N.Y. 1980) (citing Restatement (Second)
of Torts § 768 (1979)). Accordingly, New York courts sustain
claims for tortious interference with at-will contracts only
upon a showing of wrongful means. See Carvel Corp. v. Noonan,
818 N.E.2d 1100, 1104 (N.Y. 2004); see also W. Meat Co., Inc. v.
IBP, Inc., 683 F. Supp 415, 418 (S.D.N.Y. 1988) ("The law is

10

clear . . . that interference with a voidable contract or an at-will arrangement is actionable if the interference was motivated by malice or was accomplished by tortious means."). Wrongful means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Carvel, 818 N.E.2d at 1104.

In this case, the complaint does not allege such wrongful conduct. As the DFS explains, the defendants' inclusion of the APA clause "cannot violate the Insurance Law or the Financial Services Law because neither law expressly bars such language." DFS Letter 2. The defendants' exercise of their valid contractual rights does not rise to the level of wrongful conduct and cannot support a claim for interference with an at-will contract. See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 589 (2d. Cir. 2005) (per curiam) ("As the complaint alleges nothing more than [the plaintiff's] exercise of its contractual right, it cannot support a claim for tortious interference with contract.").

Because the plaintiffs do not allege plausibly that the APA clause violates any law, and because the defendants' enforcement amounts to no more than the exercise of their contractual rights, the complaint fails to allege wrongful conduct sufficient to support a tortious interference with contract claim.

11

Accordingly, the defendants' motion to dismiss Count I is
**granted**.

### C. Tortious Interference with Economic Advantage (Count II)

The plaintiffs allege that the defendants' conduct in fore-
closing their insured from retaining public adjusters interfered
with the plaintiffs' economic advantage with the Insured. Compl.
¶ 28.

To state a claim for tortious interference with economic
advantage under New York law, the plaintiffs must allege that
(1) they had business relations with a third party; (2) the de-
fendants interfered with those business relations; (3) the
defendants acted for the sole purpose of harming the plaintiffs
or used dishonest, unfair, or improper means and (4) the defend-
ants' acts injured the relationship. See G-I Holdings, Inc. v.
Baron & Budd, 179 F.Supp.2d 233, 253–254 (S.D.N.Y. 2001).

The defendants argue that the plaintiffs fail to plead the
first element because any business relation the plaintiffs seek
to preserve would arise only after the defendants' contract with
the Insured. Defs.' Mot. 10. As discussed above, this argument
misses the point. The complaint challenges the enforcement of
the APA clause, not its formation. See Compl. ¶ 22; Pls.' Opp'n
7. Because the alleged enforcement post-dates the plaintiff's
business relationship with the Insured, the plaintiffs can iden-
tify at least one business relationship with a third party,

12

namely, the Insured, that was allegedly interfered with by the defendants' enforcement of the APA clause.

Nevertheless, the complaint does not allege plausibly that the defendants acted with the sole purpose of harming the plaintiffs or that they employed dishonest, unfair, or improper means. See G-I Holdings, 179 F. Supp. 2d at 253-54.

First, the complaint does not allege plausibly that the defendants enforced the APA clause solely to injure the plaintiffs. Conduct motivated by self-interest or other economic considerations cannot be characterized as undertaken solely to harm the plaintiffs. See KAM Constr. Corp. v. Bergey, 56 N.Y.S.3d 740, 742 (App. Div. 2017). In this case, the defendants' enforcement of their contractual rights reflects ordinary self-interest and economic considerations, not a singular intent to harm.

Second, the complaint does not show that the defendants used dishonest, unfair, or improper means in enforcing the APA clause. As a general matter, such means require that the conduct amounts to a crime or an independent tort. See Carvel, 818 N.E.2d at 1103. The complaint alleges no such misconduct, and the defendants' exercise of their contractual rights is not, without more, criminal or tortious.

The plaintiffs respond that enforcing the APA clause is tantamount to a crime or independent tort because the APA clause

13

allegedly violates New York public policy. Pls.' Opp'n 10. That argument is unpersuasive. As the DFS explains, the APA clause violates no New York statute. DFS Letter 2. Nor do the plaintiffs identify any common-law authority deeming an anti-public-adjuster clause unlawful or contrary to public policy. Therefore, the defendants' enforcement of the APA clause does not constitute dishonest, unfair, or improper means that interfered with the plaintiffs' business relationship.

Because the complaint fails to allege conduct undertaken solely to harm the plaintiffs or the use of wrongful means tantamount to a crime or independent tort, the plaintiffs fail to state a plausible claim for tortious interference with economic advantage. The motion to dismiss Count II is therefore **granted**.[2]

---

[2] To the extent that Count II is based on the defendants' alleged interference with the plaintiffs' relations with the Insured, it is no different from tortious interference with contract and fails for the reasons that Count I fails to state a claim.

In their opposition, the plaintiffs contend that the defendants' enforcement of the APA clause interfered with the plaintiffs' prospective economic advantage with potential clients. Pls.' Opp'n 10. A claim for tortious interference with prospective economic advantage requires the same elements as a claim for tortious interference with business relations. See Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2002) (listing the same elements for interference with prospective economic advantage). Courts consistently hold that "[w]here a party cannot identify specific third-party relationships that were disrupted, a tortious interference claim cannot lie." Edmar Fin. Co., LLC v. Currenex, Inc., No. 21-cv-6598, 2023 WL 3570017, at *18 (S.D.N.Y. May 18, 2023); see Shah v. Lumiere, No. 13-cv-2975, 2013 WL 6283585, at *2-3 (S.D.N.Y. Dec. 3, 2013).

In this case, the plaintiffs identify no specific prospective business relationships and instead rely on "a completely prospective business relationship with potential consumers." Pls.' Opp'n 9. That is insufficient as a matter of law. Accordingly, to the extent Count II also pleads tortious interference with prospective economic advantage, the motion to dismiss that claim is **granted.**

### D. Restraint of Trade (Count III)

The plaintiff alleges that the defendants' use and enforcement of the APA clause is a restraint of trade in violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340. Compl. ¶ 33.

"Under the Donnelly Act, any contract, agreement, or arrangement that forms a monopoly or restrains competition in trade is illegal." Own Your Hunger LLC v. Linus Tech., Inc., No. 25-cv-4544, 2025 WL 1693466, at *3 (S.D.N.Y. June 17, 2025); N.Y. Gen. Bus. Law. § 340(1). To state a claim, a plaintiff must "(1) identify the relevant product market; (2) describe the nature and effects of the purported conspiracy; (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question; and (4) show a conspiracy or reciprocal relationship between two or more entities." Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 823 N.Y.S.2d 79, 81-82 (App. Div. 2006). The threshold pleading requirement is to define the relevant geographic and product market – without which "there is no way to measure a defendant's ability to lessen or destroy competition." Shepard Indus., Inc. v. 135 E. 57th St., No. 97-cv-8447, 1999 WL 728641, at *3 (S.D.N.Y. Sep. 17, 1999); see also id. at *4 ("Plaintiff's failure to allege a geographic market and product market is thus fatal to its Donnelley Act claim"); Own Your Hunger, 2025 WL 1693466, at *3. In this case, the complaint pleads no market definition at all.

15

Because the plaintiffs do not allege the relevant product or geographic market, they fail to state a claim under the Donnelly Act. The motion to dismiss Count III is therefore **granted.**

### E. Class Claims (Counts IV & V)

The plaintiffs' class claims are premised on the claims asserted in Counts II and III, see Compl. 7-10, and therefore can survive only to the extent that the plaintiffs' individual claims survive. Because the individual claims in Counts II and III are dismissed, the defendants' motion to dismiss the plaintiffs' class claims (Counts IV & V) is **granted.**

### IV. CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted** without prejudice to the plaintiffs' ability to file an amended complaint within **twenty-one (21) days.** If no amended complaint is filed within twenty-one days, the dismissal will be with prejudice.

16

The Clerk is respectfully requested to close ECF No. 13.


SO ORDERED.
Dated:     New York, New York
           December 15, 2025

                              _____
                                   John G. Koeltl
                              United States District Judge

17